**IN THE COURT OF APPEALS OF IOWA**

No. 24-1917
Filed April 9, 2025

**IN THE INTEREST OF M.B.,**
**Minor Child,**

**S.S., Father,**
         **Appellant,**

**M.B., Mother,**
         **Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.

A father and mother separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Michael A. Horn of Horn Law Offices, Des Moines, for appellant father.

Andrea B. McGinn of The Law Shop Iowa, Van Meter, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Jami J. Hagemeier, Clive, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

The district court terminated the parental rights of the mother and father of three-year-old M.B. The parents separately appeal. The father challenges the statutory ground relied on by the district court, contends termination is not in the child's best interests, and asserts that a guardianship should be established in lieu of termination. The mother asserts termination is not in the child's best interests and, like the father, argues that a guardianship should be established.

## I.      Background Facts and Prior Proceedings

M.B., born in 2021, is not a stranger to the Iowa Department of Health and Human Services (HHS). M.B. was removed from his mother's custody at the time of his birth after he tested positive for methamphetamine and his mother tested positive for methamphetamine and amphetamine. The hospital reported that on the day of M.B.'s birth, the mother was "actively using" in the bathroom of her hospital room. A child abuse assessment in September 2021 deemed the allegations against the mother founded based on the presence of illegal drugs in the child, with M.B. listed as the victim.

M.B.'s father was incarcerated. M.B. was adjudicated as a child in need of assistance (CINA), and his mother entered inpatient treatment soon after, with M.B. residing with his mother while she was in treatment. The mother began taking Suboxone as part of her medically assisted treatment. In October 2022, the mother completed treatment, and M.B.'s case was successfully closed, with M.B. remaining with his mother.

Just a little over a year after case closure, M.B. again came to the attention of HHS when it was discovered that the mother was abusing Suboxone while

caring for M.B. The child was removed from parental custody in December 2023 and adjudicated as a CINA for a second time in February 2024. In a second child abuse assessment, HHS found the mother was using dangerous substances, with M.B. again listed as the victim. The assessment noted a photo of the mother passed out with drug paraphernalia in her hand in bed with M.B. sleeping next to her.[1]

In the second CINA proceeding, the mother did not act to address her substance-use issue. She participated in an evaluation at the House of Mercy in March 2024, reporting her most recent use of methamphetamine and opioids to be three days earlier. But she failed to enter residential treatment. She completed a second substance-use evaluation in October 2024 and was diagnosed with severe alcohol-use disorder, opiate use, and severe cannabis-use disorder. She reported the use of alcohol, marijuana, and "benzos" within thirty days before this evaluation. She again failed to enter residential treatment.

Following M.B.'s second adjudication, the mother did not comply with requested drug screens and individual therapy. And her visits with M.B. were

---

[1] This photo was offered and admitted in the underlying CINA proceeding.

As an aside, the exhibits in this appellate record do not contain a physical exhibit sticker or an electronic exhibit stamp. "The clarity of the appellate record benefits by having exhibit stickers on the electronically submitted exhibits. The exhibits contained in this record do not have exhibit stickers or other markings indicating the number of the individual exhibits." *In re N.G.*, No. 19-1732, 2020 WL 825965, at *1 n.3 (Iowa Ct. App. Feb. 19, 2020). "Our independent review of the record is decidedly more difficult due to the absence of exhibit stickers or other identifying markers on the bulk of the exhibits. It is critical for review of the trial court record that the exhibits contain an identifier on the exhibit." *In re A.D.*, No. 19-1459, 2020 WL 105093, at *4 n.7 (Iowa Ct. App. Jan. 9, 2020); *accord In re J.W.*, No. 14-0515, 2014 WL 3749419, at *2 n.1 (Iowa Ct. App. July 30, 2014) ("It is essential for our review that exhibits have some identifying information.").

inconsistent. Since the most recent removal, the mother attended only thirty-two out of seventy-nine offered visits. The mother's housing situation also remained unstable, with the mother vacillating from staying at hotels to staying with friends.

The father, as in the first CINA case, remained incarcerated during the pendency of the proceedings giving rise to this appeal. He is not eligible for parole until January 2027. While incarcerated, he tested positive for Suboxone despite not having a prescription for this drug. He exercised fairly regular phone contact with M.B. and also began video visits in the months preceding the termination hearing.

## II.      Standard of Review

"We review proceedings to terminate parental rights de novo." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *Id.*

## III.      Analysis

## A.      Statutory Ground

Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

We turn first to the father's claim related to the statutory ground. The district court terminated the father's parental rights under Iowa Code section 232.116(1)(h) (2024), which permits termination upon clear and convincing proof that (1) the child is three years of age or younger; (2) the child has been

adjudicated a CINA; (3) the child has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) the child cannot be returned to the custody of the parent.

But the father's petition on appeal does not address any of the four elements contained in this ground.[2]  He does not contest that M.B. is three years of age or younger, has been adjudicated to be a CINA, or that M.B. has been removed from the physical custody of his parents for at least six of the last twelve months without any trial home placements.  And the father concedes that M.B. could not be returned to his custody as he is incarcerated.  We conclude clear and convincing evidence supports termination of the father's parental rights under Iowa Code section 232.116(1)(h).

## B.    Best Interests

We next consider whether termination is in the child's best interests, which both parents contest.  In doing so, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *Id.* at 41.

---

[2] As noted by the State, the father's argument about the statutory grounds is directed at the child's best interests rather than a challenge to the statutory grounds.

We agree with the district court that termination of both parents' parental rights is in M.B.'s best interests. He could not safely be returned to the custody of either parent. On the other hand, the child's relatives have provided him with the necessary safety and structure. They are also willing to permanently integrate the child into their family through adoption. *See* Iowa Code § 232.116(2)(b). Termination is in the child's best interests.

## C. Guardianship

Both parents contend a guardianship should be established in lieu of termination. Like the district court, we conclude this is not an appropriate permanency option for M.B. "[A] guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). M.B. was only three years old at the time of the termination hearing. And the relative placement, while willing to act as a guardian if the court ordered such, favored adoption. Given the child's young age, the fact that he has spent most of his life out of parental custody, and the relative placement's willingness to adopt, we agree with the district court that a guardianship is not the appropriate permanency option.[3]

## IV. Conclusion

Clear and convincing evidence supports the termination of the parents' parental rights, termination of the parents' parental rights is in the child's best interest, and a guardianship is not the appropriate permanency option.

**AFFIRMED ON BOTH APPEALS.**

---

[3] To the extent that either parent argues that a permissive exception should be applied because a relative has legal custody, we determine such exception to be inapplicable, as custody of M.B. was placed with HHS.